# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RODELL SANDERS, | ) |
|         Plaintiff, | ) |
|         v. | ) Case No. 13 C 0221 |
| CITY OF CHICAGO HEIGHTS, et al., | ) |
|         Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On August 5, 2014, Plaintiff Rodell Sanders brought the present First Amended Complaint alleging deprivations of his constitutional rights, along with state law claims, against Defendant City of Chicago Heights ("Chicago Heights") and certain Chicago Heights police officers.[1] *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendants' motion. Specifically, the Court dismisses with prejudice Plaintiff's malicious prosecution claim brought under 42 U.S.C. § 1983 as alleged in Count VIII, as well as Plaintiff's stand alone supervisory liability claim in Count VII. Otherwise, the Court denies Defendants' motion to dismiss.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a

---

[1] On October 15, 2014, the Court granted Plaintiff's motion to voluntarily dismiss Defendant Maureen Teed, a Federal Bureau of Investigation agent, as a Defendant to this lawsuit and denied Defendant Teed's motion to dismiss as moot. (R. 65.)

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

## BACKGROUND

In his First Amended Complaint, Plaintiff alleges that he was wrongfully convicted of murder and attempted murder—crimes that he did not commit. (R. 48, ¶ 1.) Plaintiff spent approximately twenty years in prison, during which his conviction was vacated on January 14, 2011. (*Id*. ¶ 40.) The Illinois Court of Appeals affirmed the Circuit Court's ruling overturning Plaintiff's conviction and vacating his sentence on May 30, 2012. (*Id*. ¶ 42.) The State of Illinois re-tried Plaintiff, and on July 22, 2014, a jury acquitted him of all of the charges against him. (*Id*. ¶ 43.)

As to the underlying offenses, in 1995, a jury convicted Plaintiff of the murder of Phillip Atkins, attempted murder of Stacy Armstrong, and armed robbery. (*Id*. ¶ 38.) Plaintiff alleges that the only evidence introduced against him at trial were false witness identifications. (*Id*. ¶¶ 2, 37.) The facts underlying the offenses include that on December 15, 1993, Armstrong and Atkins were sitting in a parked car around two in the morning and, after being abruptly awoken, a group of men accosted them and took them to an abandoned garage. (*Id*. ¶¶ 12, 13.) While robbing the victims, the perpetrators shot and killed Atkins and shot Armstrong leaving her for dead. (*Id*. ¶ 14.)

Plaintiff alleges that Defendant Officers Jeffrey Bohlen and Robert Pinnow knew him and bore a grudge against him, and that despite the lack of evidence against him and Armstrong's description of the perpetrators, Defendant Officers framed him as a perpetrator of the shooting. (*Id*. ¶¶ 18, 21-23.) To that end, Plaintiff maintains that Defendant Officers concocted a flawed photo line-up designed to improperly implicate him, after which Armstrong identified him as one of the perpetrators. (*Id*. ¶¶ 25, 26.)

Thereafter, in January 1994, Defendant Officers arrested Plaintiff's acquaintance Germaine Haslett on unrelated charges. (*Id*. ¶ 28.) Haslett had been cooperating with the Chicago Heights Police Department regarding an individual named Bernard Ellis. (*Id*.) On the day of his arrest, Haslett confessed to his role in the Atkins murder. (*Id*. ¶ 29.) To protect Haslett as their main witness against Ellis, Plaintiff alleges that Defendant Officers sought to minimize Haslett's complicity in the Atkins shooting by allowing him to claim that he was simply the "lookout" in exchange for pointing the finger at Plaintiff. (*Id*. ¶ 30.) More specifically, in exchange for implicating Plaintiff, Haslett pleaded guilty to armed robbery in the

3

Atkins and Armstrong case instead of facing murder and attempted murder charges. (*Id*. ¶ 31.) In addition, Plaintiff asserts that Defendant Officers conferred other benefits to Haslett, including terminating his probation in an unrelated drug case. (*Id*. ¶¶ 32-36.)

Plaintiff further alleges that the Chicago Heights Police Department has a history of police misconduct. (*Id*. ¶ 44.) Plaintiff, for example, points to Defendant Officer Sam Mangialardi's 1993 arrest and subsequent 1994 conviction for racketeering, witness tampering, and extortion. (*Id.* ¶¶ 45-48.) According to Plaintiff, the corruption within the Chicago Heights Police Department was so widespread that the Mayor enlisted a retired Supreme Court of Illinois Justice to investigate the department. (*Id*. ¶ 49.) Plaintiff points out that a total of six police officers and fifteen public officials were convicted and sentenced based on this systemic corruption. (*Id*. ¶ 48.)

## ANALYSIS

I.  **Constitutional Violations — Counts I, III, and V[2]**

In Count I of his First Amended Complaint, Plaintiff alleges that Defendant Officers violated his due process rights by deliberately withholding exculpatory evidence and fabricating false reports and other evidence, thereby misleading and misdirecting Plaintiff's criminal prosecution. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Fields*

---

[2] As Plaintiff acknowledges in his First Amended Complaint, he is alleging a malicious prosecution claim under 42 U.S.C. § 1983 in Count VIII to preserve this claim for appeal in the event that the United States Court of Appeals for the Seventh Circuit overturns its ruling in *Newsome v. McCabe,* 256 F.3d 747 (7th Cir. 2001), which holds "that a federal suit for malicious prosecution by state officers is permissible only if the state in which the plaintiff had been prosecuted does not provide an adequate remedy, which [] Illinois does." *Llovet v. City of Chicago*, 761 F.3d 759, 760 (7th Cir. 2014). In *Llovet,* the Seventh Circuit reiterated that *Newsome* remains controlling authority in this Circuit. Therefore, the Court grants Defendants' motion to dismiss Count VIII of the First Amended Complaint.

*v. Wharrie*, 740 F.3d 1107, 1117 (7th Cir. 2014). In Count III, Plaintiff alleges that prior to arresting him, Defendant Officers reached an agreement to frame him for murder and attempted murder and deprive him of his constitutional rights, including withholding exculpatory materials to which he was lawfully entitled. *See Thompson v. City of Chicago,* 722 F.3d 963, 979 (7th Cir. 2013). In Count V, Plaintiff alleges that Defendant Officers failed to intervene to prevent the violation of his constitutional rights. *See id.*

In the present motion, Defendant Officers argue that Plaintiff's due process, conspiracy, and failure to intervene claims fail under the federal pleading standards because Plaintiff refers to Defendant Officers collectively, instead of identifying each Defendant Officers' individual actions underlying these claims. In other words, Defendant Officers contend that Plaintiff's group or collective pleading cannot withstand the present motion to dismiss. Faced with a similar argument, a judge in this district explained:

> Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer. Such a pleading standard would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they could not be individually identified, even if liability for acting in concert (or for aiding and abetting each other) would otherwise apply.

*Hyung Seok Koh v. Graf,* No. 11 C 2605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013); *see, e.g., Johnson v. Village of Maywood,* No. 12 C 3014, 2012 WL 5862756, at *2 (N.D. Ill. Nov. 19, 2012).

Indeed, all that is required at this stage of the proceedings is that Plaintiff put Defendant Officers on notice of his claims by alleging a short and plain statement showing that he is entitled to relief. *See Twombly,* 550 U.S. at 555; *Johnson*, 2012 WL 5862756, at *2. Here, Plaintiff has alleged that Defendant Officers Bohlen and Pinnow bore a grudge against him and

5

despite the lack of evidence against him, Defendants Officers, working with other officers, conspired to frame him for crimes that he did not commit. Plaintiff further alleges that Defendant Officers fabricated evidence and withheld exculpatory evidence by concocting a suggestive photo line-up and using Haslett to implicate Plaintiff in Atkins' murder. In addition, Plaintiff states that Defendant Officers withheld Haslett's confession regarding the Atkins murder and conferred benefits upon Haslett in exchange for his fabricated testimony. Plaintiff also asserts that throughout the 1990s, a group of Chicago Heights Police Officers, including the named Defendant Officers, engaged in systemic pattern of coercion, fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which corrupted the investigative process. Under the circumstances, Plaintiff has alleged sufficient details that present a "story that holds together" in relation to his due process claim and the derivative conspiracy and failure to intervene claims. *See Swanson v. Citibank, N.A.,* 614 F.3d 400, 404-05 (7th Cir. 2010). The Court therefore denies Defendant Officers' motion to dismiss Counts I, III, and V.

**II.     Supervisory Liability Claim — Count VII**

In Count VII of the First Amended Complaint, Plaintiff brings a separate supervisory liability claim. Although § 1983 does not authorize a separate, cognizable claim for supervisory liability, § 1983 does create liability for a defendant's personal acts, conduct, or decisions. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). Put differently, for supervisors to be personally liable, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citation omitted). In short, a supervisor must be

6

personally responsible for the deprivation of a constitutional right. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (citation omitted).

Here, Plaintiff alleges that federal prosecutors prosecuted Defendant Mangialardi and a number of other Chicago Heights Police Officers for racketeering and witness tampering just prior to the incident underlying this lawsuit. (First Am. Compl. ¶¶ 45-48.) Similarly, Plaintiff maintains that the Chicago Heights Police Department's misconduct was so widespread that the Mayor enlisted a retired Supreme Court of Illinois Justice to investigate the department. (*Id.* ¶ 49.) Plaintiff further explains that due to the systemic corruption in Chicago Heights, six police officers and fifteen public officials were convicted and sentenced. (*Id.* ¶ 48.) Accepting the well-pleaded facts as true and drawing all reasonable inferences in Plaintiff's favor, he has sufficiently alleged that after the Chicago Heights police officers were indicted and convicted—thereby putting supervisors on notice of the misconduct at issue—the misconduct in the Chicago Heights Police Department nevertheless continued. Moreover, the corruption charges for which Defendant Mangliardi and a number of other Chicago Heights Police Officers were prosecuted, including witness tampering, are similar, in part, to the allegations in Plaintiff's First Amended Complaint. Under the circumstances, Plaintiff has sufficiently alleged supervisor liability.

The Court therefore grants Defendant Officers' motion to dismiss Plaintiff's supervisory liability claim in Count VII as a stand alone claim with the caveat that Plaintiff has sufficiently alleged supervisory liability as to his constitutional claims.

**III.     State Law Claims — Counts X and XI**

    **A.     Malicious Prosecution Claims — Count X**

In Count X of the First Amended Complaint, Plaintiff alleges a common law malicious prosecution claim. "The elements of malicious prosecution in Illinois are (1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages." *Williams v. City of Chicago,* 733 F.3d 749, 759 (7th Cir. 2013) (citing *Gonzalez v. City of Elgin,* 578 F.3d 526, 541 (7th Cir. 2009), and *Swick v. Liautaud,*169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (1996)).

Plaintiff has sufficiently alleged that he was prosecuted for crimes that he did not commit and that a jury found him not guilty of these crimes. He has also alleged damages, namely, that he spent approximately twenty years in prison for these crimes. Thus, the Court turns to whether Plaintiff has sufficiently alleged that Defendant Officers acted with malice. In his First Amended Complaint, Plaintiff alleges that certain Defendant Officers had a grudge against him. He also alleges that Defendant Officers spoke with the victim, Armstrong, manipulated her, and used a suggestive line-up in order for her to identify Plaintiff as the perpetrator. (First Am. Compl. ¶¶ 24-27.) In addition, Plaintiff alleges that Defendant Officers withheld Hastlett's confession to the murder and attempted murder, fabricated a story for Hastlett to tell that would implicate Plaintiff in the crimes, and conferred benefits on Hastlett for his cooperation. (*Id.* ¶¶ 28-32.) Viewing these allegations in Plaintiff's favor, he has sufficiently alleged malice, namely, that the officers who initiated his prosecution had "any motive other than that of bringing a guilty party to justice." *Williams,* 733 F.3d at 759-60 (citation omitted).

Moreover, Plaintiff's failure to specifically identify each Defendant Officer involved in his prosecution is not fatal to his claim at this procedural posture, especially because "[l]iability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff," but rather "extends to all persons who played a significant role in causing the prosecution of the plaintiff." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill.App.3d 340, 348-49, 733 N.E.2d 835, 248 Ill.Dec. 160 (1st Dist. 2000). Accordingly, directing "allegation[s] against multiple defendants at the pleading stage is not impermissible" because a "plaintiff may not be able to specify which individual committed which parts of the alleged misconduct before the benefit of discovery." *See Kuri v. City of Chicago,* No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014). The Court therefore denies Defendants' motion to dismiss Plaintiff's common law malicious prosecution claim alleged in Count X.

### B. Intentional Infliction of Emotional Distress Claim — Count XI

In Count XI, Plaintiff brings a common law intentional infliction of emotional distress claim ("IIED"). To establish an IIED claim under Illinois law, Plaintiff must show that "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dep't,* 602 F.3d 852, 863-64 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.,* 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* at 864 (citation omitted).

9

Again, Defendants argue that Plaintiff's reference to Defendants as a whole, instead of identifying each individual Defendant's misconduct, is insufficient at this stage of the litigation. As discussed in detail above, however, this argument is untenable. Moreover, Plaintiff's allegations that Defendants framed him for a murder that he did not commit resulting in Plaintiff's twenty-year incarceration fulfill the "extreme and outrageous" standard under Illinois law. Indeed, it is intolerable in a civilized society for police officers, who have a position of power within our society, to abuse their position and frame an innocent individual for crimes that he did not commit and then pursue the wrongful prosecution of that individual. *See Carroccia v. Anderson,* 249 F.Supp.2d 1016, 1028 (N.D. Ill. 2003); *Doe v. Calumet City,* 161 Ill.2d 374, 393, 641 N.E.2d 498, 507, 204 Ill.Dec. 274, 283 (Ill. 1994), *overruled in unrelated part by In re Chicago Flood Litig.,* 176 Ill.2d 179, 196, 223 Ill.Dec. 532, 680 N.E.2d 265, 273 (Ill. 1997)). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's IIED claim as alleged in Count XI of the First Amended Complaint.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Rule 12(b)(6) motion to dismiss.

**Dated:** November 7, 2014

**ENTERED**

_/s/ Amy J. St. E_
**AMY J. ST. EVE**
**United States District Court Judge**
